EDWARD D. PEARCE & another, Executors, *vs.* MARY ANN BILLINGS & others.

W. by his will bequeathed certain legacies, purporting to be legacies of bank stock, bequeathing in the aggregate more stock in some banks than he possessed. *Held,* that the legacies should be regarded as pecuniary legacies, the amount thereof to be ascertained by reference to the value of the stocks in which they were expressed, and that the valuation should be taken at the time they were payable, viz., one year after the testator's decease.

BILL IN EQUITY brought by Edward D. Pearce, and William H. Waterman, executors of the will of James Wheaton, to obtain the construction of the court concerning certain legacies in his will. The bill stated that the testator bequeathed, among other things, eight hundred shares of the capital stock of the Blackstone Canal National Bank, whereas at the time said will was made, he owned only eighty shares, and never at any time had owned any more. That he bequeathed ninety shares of the stock of the Globe National Bank, whereas he owned only eighty-four shares, and never had any more. The bill suggested the following doubts and questions for the interpretation of the court: Whether said legacies of bank stock and the legacies of other bank stock under said will were general or specific legacies, and whether said legatees of the stock of the Blackstone Canal National Bank and the Globe National Bank were entitled to have the same made up and paid out of the general estate of the testator, and, if so, how, and in what proportion the legacies should abate, the residuary estate of the testator not specifically

bequeathed not being sufficient for the full payment of the same, and the testator having left no real estate except that specifically devised. The question when the valuation should be made if the legacies should be regarded as pecuniary, was also submitted to the court. The following are the clauses of the will respecting which the instruction of the court was asked: —

" I give and bequeath to Mary Ann Billings . . . . all my household furniture and clothing of every description. Also, twenty shares in the Globe National Bank in said city of Providence.

. . . . . . . . . . . .

" I give up to Thomas D. Gladding all claims that I have against him, and to his wife, five shares in the Globe National Bank of said city of Providence. I give to the daughters of Thomas D. Gladding three shares each in said last named bank.

" I give to Martha Sheldon, daughter of Christopher B. Pierce, six shares in said Globe National Bank. I give to the Third Baptist Society, of said city of Providence, twenty-six shares in said last named bank. I give to the Charitable Baptist Society of said city four hundred shares in the Blackstone Canal National Bank of said city, and fifteen shares in the Globe National Bank of said city, to be used in their discretion for the assistance of aged and infirm Baptist ministers, or their widows, in the State of Rhode Island.

" I give to the Friendship Street Baptist Society, in said city of Providence, ninety-six shares in said Blackstone Canal National Bank.

" I give to the Jefferson Street Baptist Society, in said city of Providence, three hundred shares in said last named bank, and also two hundred dollars towards paying for their new church.

" I give to Sophia, daughter of John A. Howland, four shares in said last named bank.

" All the above shares in said Blackstone Canal National Bank being at twenty-five dollars par value."

The will contained numerous other legacies of bank stocks, and also sundry legacies of sums of money, but in no other case did the amount of bank stock bequeathed exceed the amount possessed by the testator at the time of his death.

The residuary clause of the will was as follows : —

" All the residue and remainder of my property and estate I give and bequeath to the Charitable Baptist Society, their successors and assigns, in *special trust*, that they shall, in their discretion, appropriate the same for charitable and missionary purposes."

*James Tillinghast*, for the executors, stated the case to the court.

*Douglas*, for the Jefferson Street Baptist Society and the Friendship Street Baptist Society, contended that the legacies to them and all the other legacies of bank stock were general, and that all the other legacies should pay contributive portions to make good the deficiency.

*Payne*, for Elizabeth Cozzens, Martha B. Wheaton, and as guardian *ad litem* for sundry other and minor legatees, *contra*.

DURFEE, J. The principal question in this case was whether certain legacies, given by the will of the late James. Wheaton, purporting to be legacies of stock, are to be regarded as specific or pecuniary ; and we have decided, in accordance with the admitted preponderance of authority, that they are to be regarded as pecuniary legacies, the amount thereof to be ascertained by reference to the value of the stocks in which they are expressed. We are now asked to decide at what time the valuation shall be taken — whether at the making of the will, at the death of the testator, or at the end of a year after his death ; no question being made but that the legacies then become payable, though our statute exempts the executor from suit for a year after the probate of the will. In favor of the first mentioned time it is urged that the testator, when he fixed the amounts of the legacies, must be supposed to have had in mind the value of the stocks in which they are expressed, and that therefore it would probably best carry out his intention to take the time of making the will as the time of valuation, inasmuch as. the same stocks might have a very different value at a later time. But if this be so the question arises, why did not the testator himself reduce the stocks to their pecuniary equivalents, and bequeath the sums thus ascertained, instead of leaving such reduction to be made by his executor at a time when,. possibly, the value of the stocks at the date of the will could not be easily ascertained. In favor of making

the death of the testator the time of valuation, it is urged that the legacies then vest, though not payable until a year afterwards, and that, if given in the amounts of money represented by the stocks, the legatees would then know how much they were entitled to receive. But the legacies are given, not in money but in stocks, and doubtless are so given for a reason which is deserving of consideration. The reason for this special form of bequest, which is suggested by some of the cases, is, that it was the intention of the testator to have the stocks mentioned purchased for the legatees by his executor, or to have the legatees furnished with the means to purchase the stocks for themselves. *Robinson* v. *Addison*, 2 Beav. 315. If this is the correct view (and certainly it commends itself as a reasonable view), then, in case the legacies are paid within a year, the valuation should be made at the time of payment; if not paid until afterwards, the valuation should be made at the end of the year, or when the legatees are entitled to call for their payment, and the legacies so ascertained should draw interest from that time. Upon the whole we incline to the opinion that, unless the legacies are sooner paid, the valuation is to be made as of the time when the legatees are entitled to have them paid. And this view is supported by the decision of Lord Eldon in *Sibley* v. *Perry*, 7 Ves. 522. In that case the testator, having directed a transfer of £1,000 3 per cent. consols, three months after his decease, gave several other legacies of stock " as aforesaid," and his lordship was at first inclined to hold that by force of the words " as aforesaid," the said other legacies, as well as the £1,000, were payable in three months, and to be valued as of that date ; but, after deliberation, he came to the conclusion that the words were used only to designate the description of stock, and he remarked : " The consequence is, therefore, as to those with respect to which no time is mentioned, the value must be taken at the end of the year, the usual time." It is true the point does not seem to have been argued, but it was decided by a judge who was not accustomed to decide without due consideration, and for anything that appears, the decree was entered conformably to the decision.

We direct in this case that the valuation be taken as if made at the end of the year after the testator's decease.

*Decree. The case was referred to a master to make the valua-*

*tion as directed by the court, and upon the coming in of his report, by reducing each legacy to a pecuniary value, and making upon all a proportional abatement, it was confirmed by a final decree.*